O'NEIL ENGINEERING CO. v. INCORPORATED TOWN OF RYAN et al.

No. 1638.    Opinion Filed May 14, 1912.

(124 Pac. 19.)

1.    MUNICIPAL CORPORATIONS—Contracts—Notice of Authority. Whoever deals with a municipality does so with notice of the limitations on its or its agents' powers. All are presumed to know the law, and those who contract with it, or furnish it supplies, do so with reference to the law; and if they go beyond the limitations imposed they do so at their peril.

2.    SAME—Indebtedness—Limitations. The intention and plain purpose of section 26, art. 10, of the Constitution, is to require municipalities to carry on their corporate operations upon the cash or pay as you go plan. The revenues of each year must take care

of the expenditures of such year; and any liability sought to be incurred by contract, express or implied, executed or executory, in excess of such current revenue in hand, or legally levied, is void, unless it be authorized by a vote of the people, and within the limitations therein provided.

3.    SAME—Submission of Question to Popular Vote. Section 26, art. 10, of the Constitution, provides a complete referendum for submitting to the voters the question of incurring indebtedness in excess of the current revenue, within the limitations therein established.

4.    SAME. To obtain the authority of the qualified voters to incur an indebtedness, or to enter into a contract otherwise prohibited, the proposition must be submitted to them in such specific language as to apprise the voters of the full purpose and the exact and particular thing upon which they are called upon to vote and decide.

(Syllabus by Brewer, C.)

*Error from District Court, Jefferson, County;*
*Frank M. Bailey, Judge.*

Action by the O'Neil Engineering Company against the Incorporated Town of Ryan and others. Judgment for defendants, and plaintiff brings error. Affirmed.

*Jones & Green* and *Lewis & Phillips,* for plaintiff in error.

*Chas. E. Davis,* for defendants in error.

Opinion by BREWER, C. This is a suit for an injunction and a receiver. The suit was filed in the district court of Jefferson county by the O'Neil Engineering Company, as plaintiff, against the incorporated town of Ryan, and the officers thereof. naming them, as defendants. It was brought for the purpose of restraining the paying out of certain funds, the same being a portion of the proceeds of a bond issue, and for the appointment of a receiver to take charge of such funds pending the litigation.

A demurrer was interposed, challenging the sufficiency of the petition, in that its allegations were not sufficient to entitle plaintiff to the relief sought. Upon hearing at chambers, the judge refused to grant a temporary injunction and the appointment of a receiver. Because of such refusal, this appeal is prosecuted.

The question before us is to determine whether, upon the showing made, plaintiff was entitled to equitable relief.

The plaintiff predicates its action upon a certain written contract, attached to its petition, dated November 30, 1908, and which, it alleges, was entered into between the town of Ryan, acting through the chairman of its board of trustees, as party of the first part, and the plaintiff, O'Neil Engineering Company, as party of the second part. This contract appears to have been signed by the chairman of the board of trustees, and to have been attested by the town clerk with the town seal attached. Briefly summarized, it provided:

"That the plaintiff was to prepare and furnish plans and specifications for the construction of a proposed system of water-works, sewers, and electric lights, with an estimate of cost of same; to assist defendant in awarding contracts for material and machinery; to employ all labor necessary in collecting material and in the construction of the plant; to furnish superintendence and all tools, such as picks, shovels, plows, scrapers, lanterns, hammers, etc., necessary to do the work."

Plaintiff was further to keep and render weekly pay rolls for work done and to inspect material; to furnish a steam trenching machine, paying freight thereon, with the fuel and labor to operate it, and was to excavate all the trenches for the waterworks system, according to certain dimensions, and for which defendant was to pay it a fixed sum per lineal foot. That wherever steam machinery would not work the excavations were to be made by hand, the pay rolls therefor to be paid by defendant.

Under the contract, plaintiff was to receive the sum of ten per cent. upon the gross amount expended by the city, in addition to the full contract price for the excavation of the trenches in which the water pipes were to be laid. The contract further provided:

"That none of the payments as above recited, shall be due and payable until the bonds of the town of Ryan have been voted, sold, and paid for."

Plaintiff's petition discloses that there were no current funds of the town with which to meet any of the expenses called for in the contract. On this point the petition avers:

"That the current expenses of said town consume and exhaust its current revenues; * * * that taxes against the taxable property situated in said town have been and are now imposed to the full limit allowed by law; and that no other funds or property of said town are now or will be available and lawfully subject to the payment of any judgment that it may herein recover," etc.

Plaintiff further avers, in substance, that after the execution of said contract, November 30, 1908, it furnished defendant with plans and specifications for the proposed work, and that on May 26, 1909, an election was called by the board of trustees to be held on June 15, 1909, for the purpose of voting on the question of issuing the bonds of the town in the sum of $69,000, with which to construct the waterworks, light plant, and sewer system, and that at such election such bonds were authorized by the voters. Plaintiff then avers that, notwithstanding its readiness, willingness, and ability to carry out its contract, and its tender and offer so to do, after the bonds had been voted and the incurring of the indebtedness thereon authorized, in June, 1909, the defendant, acting through its then board of town trustees, repudiated the said contract altogether, and gave notice to plaintiff that it did not propose to be bound thereby, and that plaintiff would not be permitted to in any wise perform said contract in any particular. Plaintiff further avers that after such repudiation of its contract the defendant constructed the said works under contracts with other parties, ignoring plaintiff; and for such work, and for the construction of said plants, it had paid to other parties all but a small balance of the proceeds of the said bond issue, and that, unless restrained, defendant would pay out the balance of the same. Plaintiff avers that such balance of funds in the hands of defendant of such bond issue were sufficient to pay it the sums alleged to be due it by defendant under its contract, and that such funds were charged with a trust in the hands of the defendant for the payment thereof. Its prayer is to enjoin the defendant, its officers and agents, from paying out a certain specified balance of such funds, and for a receiver to take charge of and hold the same.

It is contended by defendant that the contract relied on by plaintiff as a basis for this suit is invalid, because made without authority of law, and in contravention of the Constitution and laws of the state. The court, in sustaining the demurrer, took this view of the case. There being no current revenue on hand, or lawfully levied, out of which the contemplated expenses of this contract, and of the improvements to be made, could be paid, the funds therefor could only be provided in accordance with sections 26 and 27 of article 10 of the Constitution.

Section 26, *supra*, relates to the incurring of indebtedness for any purpose in excess of the current revenues, and within certain limits. Section 27, *supra*, relates to incurring indebtedness in excess of the limitations imposed in section 26, for constructing or repairing public utilities, to be exclusively owned by the city. It is not shown that the indebtedness involved here was in excess of the limitations found in section 26, *supra*, and we may look to that section for a test of the contract involved. It follows:

"Art. 10, sec. 26, Const. No county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, nor, in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount, including existing indebtedness, in the aggregate exceeding five per centum of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness; provided, that any county, city, town, township, school district, or other political corporation, or subdivision of the state, incurring any indebtedness requiring the assent of the voters as aforesaid, shall, before or at the time of doing so, provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within twenty-five years from the time of contracting the same."

That this section of the Constitution provides a complete referendum for submitting to the voters the question of incurring indebtedness in excess of the current revenues for the current year has been decided by this court, and is not disputed in this case. *Board of Education of Sapulpa v. McMahan,* 26 Okla. 588, 110 Pac. 907; *Board of Education of Ardmore v. State ex rel.,* 26 Okla. 366, 109 Pac. 563; *North v. McMahon,* 26 Okla. 502, 110 Pac. 1115.

This section of the Constitution has been under consideration a number of times by this court, and we collect here those decisions, not that all of them are in point on the question here, but they enlighten the precise question and express the proper view to be taken of this provision. *State ex rel. Edwards v. Miller,* 21 Okla. 448, 96 Pac. 747; *Campbell v. State,* 23 Okla. 109, 99 Pac. 778; *Barnes v. Hill,* 23 Okla. 207, 99 Pac. 927; *City of Ardmore v. State,* 24 Okla. 862, 104 Pac. 913; *North v. McMahon,* 26 Okla. 502, 110 Pac. 1115; *Board of Education of Sapulpa v. McMahan,* 26 Okla. 588, 110 Pac. 907; *Board of Education of Ardmore v. State ex rel.,* 26 Okla. 366, 109 Pac. 563; *Riley v. Carrico,* 27 Okla. 33, 110 Pac. 738; *Marlow v. School Dist. No. 4,* 29 Okla. 304, 116 Pac. 797; *State ex rel. Oklahoma City v. West,* 29 Okla. 503, 118 Pac. 146.

The intention and plain effect of the provision of the Constitution under consideration is to require municipalities to carry on their operations upon the cash or pay as you go plan. The revenues of each year must take care of the expenses of such year; and any liability sought to be incurred by contract, express or implied, executed or executory, in excess of such current revenue, in hand or legally levied, is void, unless it be authorized by a vote of the people, and within the limitation therein required. *Campbell v. State ex rel.,* 23 Okla. 109, 99 Pac. 778; *City of Ardmore v. State ex rel.,* 24 Okla. 862, 104 Pac. 913; *Spilman v. City of Parkersburg,* 35 W. Va. 605, 14 S. E. 279; *Litchfield v. Vallou,* 114 U. S. 190, 5 Sup. Ct. 820, 29 L. Ed. 132; *San Francisco Gas Co. v. Brickwedel,* 62 Cal. 641; *McGowan v. Ford,* 107 Cal. 177, 40 Pac. 231; *Sutro v. Pettit,* 74

Cal. 332, 16 Pac. 7, 5 Am. St. Rep. 442; *First National Bank v. Doon Dist. Tp.*, 86 Iowa, 330, 53 N. W. 301, 41 Am. St. Rep. 489; *Lake County v. Rollins*, 130 U. S. 662, 9 Sup. Ct. 651, 32 L. Ed. 1060. In the Campbell case, *supra*, Mr. Justice Williams, in discussing this provision, says:

"The settled purpose has been to place restrictions and limitations upon the taxing power by a restriction upon the outlay of the money after it has been collected by the people. Under this provision, the government is dependent from year to year upon the periodical vote of supplies."

And further:

"No one idea stands out more clearly than that barriers should be erected against the creation of municipal indebtedness."

It is apparent that the contract in suit, if its effect was to incur a present obligation or indebtedness against the defendant, was and is void, because there were no funds on hand, or legally levied, out of which any payments could have been made on it; and no vote of the electors had authorized the creation of such obligation or indebtedness, as required by the Constitution. Counsel for plaintiff, however, seek to take this contract from under the operation of the Constitution, which, if applicable to it at the time of its execution, destroys it, by the claim that because of the provision contained in it "that none of the payments, as above recited, shall be due and payable until the bonds * * * have been voted, sold, and paid for." The contention being that because of that provision the contract was not enforceable until after the bond funds were received; that, therefore, at the time of making the contract no indebtedness was incurred, because there was no present obligation to pay; and that the indebtedness arose, in law, when the bond funds were received, and therefore at a time when the indebtedness could be enforced. Indeed, this contention provides the only debatable question in the case. No authority has been cited, and we have found none, where the precise question is considered under anything like a similar situation applied to a similar law.

The plaintiff cites and relies on three cases as sustaining its contention on this point, viz., *Winston v. Ft. Worth* (Tex. Civ. App.) 47 S. W. 740, *Lamar Water Co. v. City of Lamar,* 128 Mo. 188, 26 S. W. 1025, 32 L. R. A. 157, and *Onderdonk v. Plainfield,* 42 N. J. Law, 480. We will notice these cases briefly.

In *Lamar Water Co. v. City of Lamar, supra,* the law relative to incurring indebtedness is somewhat similar to the law here, and that case is relied upon by plaintiff as authority to support its contract. In that case the law (Rev. Stat. Mo. 1889, sec. 1589) authorized the mayor and board of aldermen to contract by ordinance with a water company to supply the city with water, when authorized by a two-thirds vote of the qualified electors. On April 21, 1890, an ordinance was passed, setting forth the terms of a contract with the company for the construction and operation of waterworks by the company. The ordinance provided that the contract therein (in the ordinance) contemplated should take effect when the ordinance was ratified by a two-thirds vote of the voters. At an election held shortly thereafter, the contract was adopted by the voters, after which it was accepted by the company in writing, the works constructed and accepted by the city, and upon resolution of the board of aldermen a contract was executed between the parties, reciting the provisions of the ordinance voted on, with a statement added that the ordinance was then in full force and effect. The city contended that because the ordinance proposing the contract was passed before the vote of the people, approving it, the ordinance was void. The court held against this contention, and properly, holding, after reciting the statute authorizing the mayor and board of aldermen to make the contract, by ordinance, upon a vote of the people, "that it was competent and proper to pass the ordinance to take effect when ratified."

The difference in that case and the one here appears from the statement. In that case, with authority of law, the precise contract for a completed system of waterworks was submitted to the voters. It was not merely a vote of funds; it was the making of a specific contract by the municipality, through the voters;

its formal execution only being left to the city officers. The details of the contract had to be prepared before it could be intelligently submitted and acted on by the voters. In the case at bar, no contract was voted on. The vote was solely to provide funds, thus affording, if the proposition carried, authority thereafter in the city's agents to make contracts under the regulations prescribed by the statutes, which would require competitive bidding as to most of the things to be done.

The Onderdonk case, *supra*, is not applicable, under any view, to the case at bar. In that case an act of the Legislature authorized the appointment of commissioners to lay out and establish public roads and streets. The commissioners, in executing the duties specifically imposed upon them by law, caused surveys and maps to be made. The court held that the authority of the commissioners to incur the expense therefor was necessarily implied from the provisions of the act.

In the Winston case, *supra*, the city of Ft. Worth, under its charter, had the authority, through its officers, to become indebted, borrow money on the credit of the city, etc., and to provide for the payment thereof, etc. There is, however, a constitutional provision which prohibits any debt from being made, unless provision is made at the time for its payment. In that case a debt was contracted in December, and at the time a resolution was passed, directing the preparation of an ordinance which was to provide for the payment of the debt. This ordinance was passed in January, making such provision. It was contended that, inasmuch as the provision for the payment was not in fact contemporaneous with the incurring of the indebtedness, the same was void. The court held otherwise, on the theory that the resolution, passed at the time of the contract, directing an ordinance providing for payment, contemplated the ordinance as part of it; and that the transaction was not complete until the passage of the ordinance in January. The facts surely justified that holding, but are equally conclusive as showing the weakness of the case as authority here. The fundamental weakness lies in the fact that the officers of the city had full power

to do both acts, *i. e.*, incur the indebtedness and also provide for the payment thereof.

The following cases seem to be somewhat in point:

In the case of *Mayor and City Council of Baltimore v. Gill,* 31 Md. 375, the city of Baltimore attempted to borrow money by hypothecating certain stocks it owned, with the provision that the shares of stock should be liable for the debt. In the opinion the court says:

"It has been argued that no debt has been created by the ordinance, because by the second section it is provided that the parties loaning the money shall look for its repayment exclusively to the stock pledged, and that in no event is the city liable or responsible for the return or repayment of any part thereof, even though the stock pledged should prove insufficient. This provision was doubtless adopted for the purpose of avoiding the restrictions imposed by the Constitution. We think it altogether insufficient for that purpose. A debt is money due upon a contract, without reference to the question of the remedy for its collection. It is not essential to the creation of a debt that the borrower should be liable to be sued therefor. The plain intent of this section is to restrain the municipal government of Baltimore from borrowing money, except for the purposes and in the manner prescribed, either upon the general credit of the city, or by a pledge of its revenues or assets, thereby creating a debt and imposing additional burdens upon the citizens, which may, directly or indirectly, involve increased taxation. In *Newell v. People,* 7 N. Y. 9, it was also held that the borrowing of money, to be paid for certain revenues, and not otherwise, was the creation of a debt, and as such a violation of the constitutional provision prohibiting the incurring of an indebtedness beyond certain prescribed limits."

In *Spilman v. City of Parkersburg, supra,* it is said:

"If an indebtedness of a city for current expenses and supplying water is forbidden, as being in excess of the constitutional limit, the contract upon which it arose, though in itself executory and creating only a contingent liability, is also forbidden. Prohibition of the end is prohibition of the direct designed and appropriate means. This is the true construction. Any other would deprive these constitutional limitations of the force and efficiency indispensably required to prevent or cure the evil aimed at."

In *Beard v. Hopkinsville*, 95 Ky. at page 248, 24 S. W. at page 874, 23 L. R. A. at page 409, 44 Am. St. Rep. at page 228, the Supreme Court of Kentucky says:

"A debt, payable in the future, is obviously no less a debt than if payable presently; and a debt payable upon a contingency, as upon the happening of some event, such as the rendering of service or the delivery of property, etc., is some kind of a debt, and therefore within the prohibition. If a contract or undertaking, contemplates, in any contingency, a liability to pay when the contingency occurs, the liability is absolute; the debt exists, and it differs from a present unqualified promise to pay only in the manner by which the indebtedness was incurred," etc.

We think the contract in this case attempted to impose a present obligation and liability upon defendant, notwithstanding the contingency as to payments to be made thereunder. So far as the city officers were concerned, nothing further was to be done by them. No option of any kind was to be exercised by them. The contract was not to be, and was not, submitted to the voters. It was plainly and manifestly the purpose and plan of the parties to anticipate the action of the voters—let the plaintiff in on the "ground floor—"and in effect appropriate and expend the funds before they were provided. It would certainly be unfortunate, were we compelled to sustain the contention made by plaintiff. If the agents of this town could effectually dispose of $6,500 of this fund before it was authorized, by an evasion of the restrictions of the Constitution, by the mere use of words, then they could, under the same doctrine, have contracted the expenditure of the entire $69,000 months before any authority was given to provide the funds. To hold so would mean that hereafter every corporate expenditure, dependent upon a vote of funds, would be contracted away to enterprising concerns months, and, perhaps, years, before the funds were voted. It is easy to see how dangerous this would be. If a number of firms were interested, through profitable contracts, one to furnish the engineering and the excavating, another the brick, lumber, and cement, and still another the machinery and apparatus, what a possibility would be presented, especially in small towns, for in-

fluencing the less thoughtful of the voters to vote funds the municipality could ill afford to expend. This ought not and must not be permitted. It is contrary to the real intent of the provision discussed, and to the spirit and policy running through the entire Constitution. And while it is true that the provisions of the Constitution should never be given a strained or forced construction, so as to defeat legitimate contracts brought fairly within its terms, yet the courts should at all times, with firm hand and inflexible purpose, heedless alike of public clamor and the public improvement craze, hold to the steady course and safe channels charted by that instrument.

It is argued that the contract, though illegal, was validated by the vote of the people in authorizing the bond issue for the utilities. This claim is not well founded. The ordinance submitting the question of incurring indebtedness makes no reference to the contract with plaintiff. There is nothing to indicate that the voters were apprised of the contract, and especially is there nothing to indicate that they believed they were voting to approve such a contract.

"Shall the town of Ryan, Jefferson county, Oklahoma, incur an indebtedness by issuing its negotiable coupon bonds to the aggregate amount of $45,000, for the purpose of providing funds for the construction of a system of waterworks in and to be owned exclusively by said town, and levy and collect an annual tax upon all of the taxable property in said town, sufficient to pay the interest on said bonds as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within twenty years from their date, said bonds to be dated July 1, A. D. 1909, to become due and payable July 1, A. D. 1929, and to bear interest at a rate not to exceed six per centum per annum, payable semi-annually?

☐ Yes.

☐ No."

The proposition for sewers and light plant were in similar language.

The petition alleges that the voters had common knowledge of the execution and existence of the contract. This is not sufficient. To obtain the authority of the electors to incur an indebtedness, or to enter into a contract otherwise prohibited, the matter must be submitted to them in such specific language as to apprise the voters of the full purpose and the exact and particular thing upon which they are called upon to vote and decide. *Coleman v. Frame,* 26 Okla. 193, 109 Pac. 928, 31 L. R. A. (N. S.) 556; *City of Woodward v. Raynor,* 29 Okla. 493, 119 Pac. 964.

The same arguments are used here as in all the innumerable cases, wherein contracts have been made in excess of the powers conferred on the municipal agents, and were sought to be invalidated by the courts. The appeal to equity, the suggestion of repudiation, always potent with an honest man, arises in this case. These questions always arise. They have been answered by the courts.

In *San Francisco Gas Co. v. Brickwedel,* 62 Cal. 641, *supra,* it is said:

"But it must be remembered that all are presumed to know the law, and that whoever deals with a municipality is bound to know the extent of its powers. Those who contract with it, or furnish it supplies, do so with reference to the law, and must see that the limit is not exceeded."

In the case of *Litchfield v. Ballou,* 114 U. S. 190, 5 Sup. Ct. 820, 29 L. Ed. 132, which was a case where the plaintiffs were the purchasers of bonds executed without authority, and in violation of the constitutional limitations on indebtedness, the Supreme Court of the United States says:

"The holders of the bonds and the agents of the city are *particeps criminis* in the act of violating that prohibition; and equity will no more raise a resulting trust in favor of the bond holders, than the law will raise an implied assumpsit against a public policy so strongly declared."

In *Weaver v. San Francisco,* 111 Cal. 325, 43 Pac. 974, the court says:

"Whoever deals with a municipality does so with notice of the limitation of its powers, and with notice, also, that he can

receive compensation for his labor or materials only from the revenues and income previously provided for the fiscal year during which his labor and materials are furnished; and with the knowledge, too, that all other persons dealing with the municipality have the same rights to compensation and are subject to the same limitations as he is. Even though, at the time of making his contract, there are funds in the treasury, sufficient to meet the amount of his claim, he is charged with notice that these funds are liable to be paid out for municipal expenditures before his contract can mature into a claim against the city."

It has been said that the strict enforcement of these constitutional and statutory limitations and restrictions against municipal indebtedness, which may require the invalidation of contracts, will often result in hardship. This may be true. Restless and impatient spirits, however honest and worthy, in pursuing the mad race for business, have and doubtless will continue to seek municipal contracts with no investigation, and scarcely a thought, as to the power of the agents with whom they deal. But the hardships that may so arise are not comparable with those to be suffered by the citizens of this commonwealth, if these wise and salutary limitations, imposed by the people themselves against themselves, shall be swept aside, or evaded by ingenious reasoning, to meet the supposed necessities of a situation, or even the apparent equities of a particular case.

The application for an injunction and receiver was properly denied, and the cause should be affirmed.

By the Court: It is so ordered.