## WEATHERS v. BOARD OF COM'RS OF COAL COUNTY.

No. 6064.   Opinion Filed January 18, 1916.

(154 Pac. 642.)

COUNTIES—Construction of Courthouse—Contract With Architect—Damages—Liability of County. On the 5th of November, 1908, the county commissioners of Coal county, having decided to erect a courthouse for that county upon the "rental plan," entered into a contract with W. to prepare plans for same and superintend 'its construction, for which he was to be paid 5 per cent. of the sum expended in construction. For legal reasons, the project was abandoned. Afterwards bonds to provide funds for the construction of the courthouse were voted. W. offered his services as architect as provided in the original contract. The same was refused, the original contract ignored, and the county commissioners employed other architects. **Held,** the county was not liable to W. for damages sustained.

(Syllabus by Mathews, C.)

*Error from District Court, Coal County;*
*Robt. M. Rainey, Judge.*

Action by P. H. Weathers against the Board of County Commissioners of Coal County. Judgment for defendant, and plaintiff brings error. Affirmed.

*Fooshee & Brunson,* for plaintiff in error.

*G. T. Ralls,* Co. Atty., for defendant in error.

Opinion by MATHEWS, C. The county commissioners of Coal county, Okla., having decided to erect a

courthouse for that county upon what is known as the "rental plan," on the 5th day of November, 1908, entered into a written contract with the plaintiff wherein he agreed to prepare plans and specifications for said building and to superintend its construction for 5 per cent. of the sum to be expended in the construction. Owing to an adverse decision of the Supreme Court, rendered January 19, 1909, wherein it was decided that section 2, art. 8, c. 32, p. 256, Session Laws 1897, which expressly permitted· the erection of courthouses on the "rental plan," was inoperative, being repugnant to section 26, art. 10, of the Constitution, the plan was abandoned, and this suit followed, based on the aforesaid contract, and the defense set up was that the county commissioners had no right or authority to enter into such a contract and that the same was void and unenforceable. The plaintiff proved at the trial the execution of the contract, and that he was to receive 3 per cent. of the cost of the proposed building when a contract was entered into for the construction of the building and the remaining 2 per cent. as the work progressed. It also was shown that on the 31st day of December, 1908, the defendant board passed a resolution reciting the execution of the contract on the 5th of November, 1908, and that on the 29th day of December, 1908, a contract had been entered into with a construction company for the erection of said building, and said resolution further acknowledged that 3 per cent. upon the contract price was then due the plaintiff and therein pledged the said board to make the necessary levy for the fiscal year beginning July 1, 1909, to pay the plaintiff the said 5 per cent. due and to be due him under the contract for his services. It further developed at the trial that, on account of the aforesaid decision of this

court, the proposed project to erect a courthouse for Coal county upon the "rental plan" was abandoned, but later there was submitted to the voters of that county the proposition to vote a bond issue for that purpose, which proposition carried at the submission. The plaintiff then offered his services to defendant board under the original contract, but it refused to employ plaintiff and made a contract with other architects to prepare plans and supervise the erection of the courthouse to be constructed through the bond issue. At the close of the testimony, the plaintiff requested the court to instruct a verdict in his favor; but the request was denied, and the jury directed to return a verdict in favor of defendant, from which action of the court the plaintiff prosecutes this appeal.

It will be observed that, at the time this contract was executed, the law of 1897, *supra,* provided for the erection of courthouses upon the plan proposed in the contract under consideration, but on January 19, 1909, the opinion in the case of *Campbell et al. v. State ex rel. Brett, County Attorney,* 23 Okla. 109, 99 Pac. 778, was rendered by Justice Williams, and therein it was held that the said law of 1897 was repugnant to section 26 of article 10 of the Constitution.

Plaintiff in his brief does not attack the general proposition advanced by the defendant that the board of county commissioners had no authority to make a contract which called for expenditures that exceeded the income and revenues provided for that fiscal year, but advances the argument that the only evidence introduced by the defendant was that no bonds had been voted to build a courthouse at the time the contract was entered into, but that defendant did not show that the contract

exceeded the statutory limitation or was in excess of the tax levy. While the evidence upon this point is not as direct and explicit as it should be, yet facts were proven from which no other reasonable conclusion can be drawn than that the proposed expenditure exceeded the tax levy.

It developed in plaintiff's testimony that the defendant board pledged itself on December 31, 1908, by a resolution to make a levy to pay plaintiff's claim during the fiscal year of 1909, thus plainly showing that the funds to pay his claim had not been provided for at the time the contract was made. At that very time more than one-half of the sum promised him was due, and so acknowledged, and confessedly no provisions had been made for its payment, and it was then being proposed to make such a provision for the next fiscal year.

But even conceding plaintiff's contention that defendant wholly failed to prove that the expenditure called for in the contract did not exceed the statutory limitation or was not in excess of the levy for that fiscal year, or, going further, and admitting that a levy had already been made for that identical purpose and that the entire sum was then in the hands of the county treasurer, still the plaintiff should not prevail, for three reasons:

First. He entered into a contract with the board of county commissioners to assist it in doing an illegal act; that is, to erect a courthouse when no funds had been provided for that purpose.

Second. Plaintiff contends that, as the funds for the construction of the courthouse were provided by the issuing of bonds voted by the citizens of Coal county after it was decided that a courthouse could not be erected upon the "rental plan," still the defendant was legally

bound to carry out the contract with him after the funds were thus provided by said bond issue.

The case of *O'Neil Engineering Co. v. Incorporated Town of Ryan et al.,* 32 Okla. 738, 124 Pac. 19, presents a much stronger case in favor of the losing party than does the case at bar in favor of plaintiff. It seems that in that case the board of trustees of Ryan, having in contemplation the construction of a system of waterworks and sewers, and a light plant, to be afterwards submitted to the voters of the town for their adoption, by voting a bond issue for that purpose, on November 30, 1908, entered into a contract with the O'Neil Engineering Company for it to prepare and furnish plans and specifications therefor, with an estimate of the cost of construction and, after the bonds should be voted, to superintend the construction and furnish certain tools and do certain work, to be paid for as stipulated in the contract; the contract further providing that nothing should be due and payable until the bonds had been voted, sold, and paid for. On June 15, 1909, the bond issue was authorized by the voters of the town, but the board of trustees repudiated its contract with the said engineering company and did not permit said company to perform said contract on its part. The facts in that case are so closely allied to the facts in the case at bar, and the remarks of Judge Brewer, who rendered the opinion, are so pertinent to this case, that we take the liberty of quoting approvingly therefrom at length:

"The intention and plain effect of the provision of the Constitution under consideration is to require municipalities to carry on their operations upon the cash or pay as you go plan. The revenues of each year must take care of the expenses of such year; and any liability

sought to be incurred by contract, express or implied, executed or executory, in excess of such current revenue, in hand or legally levied, is void, unless it be authorized by a vote of the people, and within·the limitation therein required. * * * We think·the contract in .this case attempted to impose a present obligation and liability upon defendant, notwithstanding the contingency as to payments to be made thereunder. So far as the city officers were concerned, nothing further was to be done by them. No option of any kind was to be exercised by them. The contract was not to be, and was not, submitted to the voters. It was plainly and. manifestly the purpose and plan of the parties to anticipate the action of the voters— let the plaintiff in on the 'ground floor'—and in effect appropriate and expend the funds before they were provided. It would certainly be unfortunate, were we compelled to sustain the contention made by plaintiff. If the agents of this town could effectually dispose of $6,500 of this fund before it was authorized, by an evasion of the restrictions of the Constitution, by the mere use of words, then they could, under the same doctrine, have contracted the expenditure of the entire $69,000 months before any authority was given to provide the funds. To hold so would mean that hereafter every corporate expenditure, dependent upon a vote of funds, would be contracted away to enterprising concerns months, and perhaps years, before the funds were voted. It is easy to see how dangerous this would be. If a number of firms were interested, through profitable contracts, to furnish the engineering and the excavating, another the brick, lumber, and. cement, and still another the machinery and apparatus, what a possibility would be presented, especially in small towns, for influencing the less thoughtful voters to vote funds the municipality could ill afford to expend. This ought not and must not be permitted. It is contrary to the real intent of the provision discussed, and to the spirit and policy running through the entire Constitution. And while it is true that the provisions of the Constitution should· never be given a strained or

forced construction, so as to defeat legitimate contracts brought fairly within its terms, yet the courts should at all times, with firm hand and inflexible purpose, heedless alike to public clamor and the public improvement craze, hold to the steady course and safe channels charted by that instrument. * * *

"It has been said that the strict enforcement of these constitutional and statutory limitations and restrictions against municipal indebtedness, which may require the invalidation of contracts, will often result in hardship. This may be true. Restless and impatient spirits, however honest and worthy, in pursuing the mad race for business have sought and doubtless will continue to seek municipal contracts with no investigation, and scarcely a thought, as to the power of the agents with whom they deal. But the hardships that may so arise are not comparable with those to be suffered by the citizens of this commonwealth, if these wise and salutary limitations, imposed by the people themselves against themselves, shall be swept aside, or evaded by ingenious reasoning, to meet the supposed necessities of a situation, or even the apparent equities of a particular case."

For further authorities, see those collated in the above case. *Haskins & Sells v. Oklahoma City,* 36 Okla. 57, 126 Pac. 204; *In re Application of State to Issue Bonds to Fund Indebtedness,* 33 Okla. 797, 127 Pac. 1065; *Faulk v. Board of Com'rs of Marshall County,* 40 Okla. 705, 140 Pac. 777.

Third. The contract sued on ends with this clause:

"In case no contract for erection of the building is awarded and the party of the first part is for any cause beyond its control restrained from proceeding with this work, then this contract shall be annulled and the party of the second part has no claim in any manner whatsoever against the county of Coal."

It is thus apparent that this provision in the contract expressly precludes the plaintiff from recovering, because the board of county commissioners of Coal county could not proceed ·with the erection of a courthouse upon the rental plan as contemplated at the time the contract was executed in the face of the decision of *Campbell et al. v. State ex rel. Brett, County Attorney, supra,* and a contingency was provided for in the above stipulation that under such conditions the plaintiff should have no claim of any kind against the county of Coal.

The contract entered between plaintiff and defendant on the 5th of November, 1908, had no connection with or relation to the erection of a courthouse in Coal county after the voting of bonds for that purpose, which was done more than two years after this contract was nullified by the above-mentioned decision, and, even if the plan to vote bonds in case of the failure of the "rental plan" was contemplated at the time the contract was signed, still the rule laid down in the opinion in the case of *O'Neil Engineering Co. v. Incorporated Town of Ryan, supra,* renders the contract void.

The judgment should be affirmed.

By the Court:   It is so ordered.