**FOSTER et al. v. BOARD OF COM'RS OF CUSTER COUNTY et al.**

No. 18018. Opinion Filed Feb. 21, 1928.

(Syllabus.)

1. Counties — Contract for Constructing Courthouse — Invalidity Where not Based on Legally Appropriated Funds.

The board of county commissioners of any county cannot lawfully enter into a contract on behalf of the county, for the construction of a courthouse and jail, where such contract would, if entered into, require the expenditure of an amount of money in excess of that on hand in a fund legally created for such purpose, together with the income and revenue lawfully provided for such fund during current fiscal year, without the assent of three-fifths of the voters of the county, voting at an election held for that purpose.

2. Same—Illegality of Claim or Warrant Where no Specific Appropriation or Bond Issue.

No claim may be legally allowed by the board of county commissioners, or warrant issued, except against a specific appropriation or a specific amount authorized by a bond issue for such purpose.

Commissioners' Opinion, Division No. 2.

Error from District Court, Custer County; T. P. Clay, Assigned Judge.

Action by John B. Foster et al. against the Board of County Commissioners of Custer County, Okla., et al. Temporary injunction granted, and thereafter dissolved on motion of defendants. From the order dissolving the temporary injunction, plaintiffs appeal. Reversed and remanded.

Darnell & La Rue and A. J. Welch, for plaintiffs in error.

Willis Cooke, Co. Atty., Sam L. Darrah, and T. W. Jones, Jr., for defendants in error.

DIFFENDAFFER, C. This is an action instituted in the district court of Custer

county by plaintiffs to enjoin the defendants, the board of county commissioners, and county clerk, from receiving, opening, or considering any bids for the construction of a courthouse and jail, or either of them, and from letting a contract to construct such building, and from appropriating any public funds for said proposed improvements; and from approving or allowing any bill against the county or ordering, issuing or paying any warrant or · evidence of indebtedness upon, against, or out of, the public funds of said county in payment for said improvements, or from taking any further steps toward the construction of said improvements or the obligation of said county for the payment thereof.

The petition is based upon a series of resolutions passed by the board of county commissioners of Custer county, copies of which were attached to the petition and made a part thereof.

The first of said resolutions was adopted on the 8th day of September, 1925, and is entitled as follows:

"A resolution declaring the intention of the board of county commissioners of Custer county, Okla., to set aside, appropriate and use unassigned portions of the sinking fund of said sinking fund during the fiscal years ending June 30, 1928, June 30, 1929, and June 30, 1930, to provide or help provide a fund to be used to erect a courthouse and jail for said county in Arapaho, the county seat of said county, and in addition thereto, to set aside, appropriate and use the proceeds derived from any tax levied, or that hereafter may be levied during said fiscal years under existing laws for said purpose; providing for notice of meeting to hear protest against so creating said fund, and erecting said courthouse and jail, all as provided by chapter 77, Session Laws of Oklahoma, 1919, being section 8587, 8588, Compiled Oklahoma Laws 1921, and other complimentary, supplementary and amendatory thereto, and declaring an emergency."

After reciting the need of the county for a courthouse and jail; the accumulation of a large sum of money in the sinking fund of the county derived from penalties; that the levy of a tax to provide or help provide funds therefor is authorized; and further reciting that because of the large expense incident to the calling and holding an election to vote bonds by the county, the board deems it wise and to the best interest of the county to use said portions of the sinking fund, and the proceeds from a tax levy, if any, for the purpose of erecting a courthouse and jail at Arapaho, the county seat, the resolution further provides:

"Whereas, authority is given in chapter 77, Session Laws of Oklahoma 1919, being sections 8587-8588, Compiled Laws of Oklahoma 1921, for the use of said funds for the erection of a courthouse and jail for said county; and,

"Whereas, according to estimate by competent architects, the cost of erection of a courthouse and jail adequate for the needs of said county is $140,000; and

"Whereas, under and in accordance with said chapter 77, Session Laws of Oklahoma 1919, being sections 8587-8588, Compiled Laws of Oklahoma 1921, provision is made for hearing of protests by the board of county commissioners of said county against the use of said funds for the erection of a courthouse and jail for said county, and said board of county commissioners is desirous of hearing and considering any such protests and reasons for not using said funds for the erection of a courthouse and jail for said county.

"Therefore, be it resolved by the board of county commissioners of Custer county, state of Oklahoma:

"Section 1. That it is deemed and hereby declared to be necessary that a courthouse and jail for said county, adequate to the needs thereof, be erected without delay at a cost not exceeding $140,000.

"Section 2. That in order to provide funds for the purpose of erecting said courthouse and jail, the board of county commissioners of Custer county, Okla., hereby declares its intention to set aside, appropriate, and use all unassigned portions of the sinking fund of said county derived from penalties, interests, or forfeiture, heretofore accrued as penalties on delinquent taxes, or to accrue as penalties on delinquent taxes in said county during the fiscal years ending June 30, 1926, June 30, 1927, June 30, 1928, June 30, 1929, and June 30, 1930, for the erection of a courthouse and jail for said county at Arapaho, the county seat thereof, to cost not exceeding $140,000 and in addition thereto, and to help provide funds for said purpose, to set aside, appropriate, and use the proceeds from the levy, if any, of any tax made or to be made under existing laws during said fiscal years for said purpose.

"Section 3. That the board of county commissioners of said county will meet in regular session on Monday, November 2, 1925. at the hour of 2 o'clock p. m. in the district courthouse in Arapaho, the county. seat of said county, to hear and consider protests against use of said proportions of said sinking fund and the proceeds, if any, from said tax levy for the erection of a courthouse and jail for said county as aforesaid.

"Section 4. That notice of said meeting, to hear and consider said protests shall be signed by the chairman of the board of county commissioners attested by the county clerk, and shall be published for 30 days in the Thomas Tribune and Butler Herald, which are the newspapers designated as the official papers for the publication of the proceedings of the county commissioners, said notice shall be in substantially the following form:"

Then follows the notice directed to be published in pursuance of the resolution. Next is attached a copy of a resolution adopted February 10, 1926, as follows:

"Whereas, the board of county commissioners of Custer county, state of Oklahoma, have by resolution heretofore adopted on the 8th day of September, 1925, and resolutions subsequent thereto provided a fund for the erection of a courthouse and jail for Custer county, Okla., and

"Whereas, the said board has determined to proceed with the erection of said courthouse and jail from the funds so provided as is provided by law, and

"Whereas, the said board has adopted plans and specifications for the erection of said courthouse and jail, and

"Whereas, it is now the desire of said board to receive bids for the erection of said courthouse and jail under the plans and specifications so adopted.

"Now, therefore, be it resolved by the board of county commissioners of the county of Custer, state of Oklahoma, that the county clerk of Custer county, aforesaid, be and he is hereby authorized and directed to advertise for bids under said plans and specifications in the official paper of said county, and such other papers in the state of Oklahoma as to him may seem proper to reach the greatest number of prospective bidders in form substantially as follows, to wit:

"Notice to Bidders.

"Sealed proposals will be received by the board of county commissioners of Custer county, state of Oklahoma, at Arapaho, Okla., until ten o'clock a. m. on the 22nd day of March, 1926, for the erection of a courthouse and jail building to be located at Arapaho, Okla., said bids to be filed with the county clerk of Custer county, Okla., on or before said hour and date.

"All labor and material will be furnished in accordance with the plans and specifications prepared for the same by Sorey and Vahlberg, architects of Oklahoma City, Okla. Buildings to be paid for out of 'The Custer county courthouse and jail construction fund.'

"Copies of the plans and specifications may be seen on file in the office of the county clerk of Custer county at Arapaho, Okla., and in the office of the architect at Oklahoma City, Okla. Copies may be obtained from the architect by depositing $50 with the architect for said return.

"Each bid must be in form of proposal which is a part of the plans and specifications and each alternate therein fully submitted, and must be accompanied with a certified check for five per cent, of the amount bid, the same being made payable to Custer county, state of Oklahoma, and shall be forfeited to said county if award of contract is made and successful bidder fails to enter into contract and furnish the surety bonds required by the laws of Oklahoma, within ten days from the acceptance of the bid.

"The board of county commissioners of Custer county, state of Oklahoma, reserve the right to reject any or all bids.

"By order of the board of county commissioners of Custer county, state of Oklahoma."

Upon the petition thus filed, a temporary injunction was issued providing:

"It is therefore ordered, adjudged and decreed that a temporary injunction and restraining order be, and the same is, granted herein enjoining the board of county commissioners and the members thereof, individually: J. E. Keen, M. I. Neher and R. B. Travis, and W. O. Mounts, the county clerk of said county, from taking any further steps toward building a courthouse or jail, or either of them, as prayed for in the petition. It is further ordered by the court that the defendants, collectively or separately, shall not receive, open, or consider any bid or bids for the construction of said courthouse and jail, or either of them, or any part thereof; and they shall not let any contract to construct said improvements, or either of them, or any part thereof; and they shall not make any tax levy or estimate, or appropriate any public fund or funds for said proposed improvements; and they shall not approve or allow any bill or claim against the county; or order, issue or pay any warrant or evidence of indebtedness upon, against, or out of any of the public funds of said county in payment for said improvements, or any part thereof, or anything pertaining thereto; and they shall not take any further steps toward the construction of said improvements, of any kind whatsoever, attempting or intending to expend any of the public funds of said county, or to in any way obligate the said county, for the payment of the construction of said improvements.

"This order shall remain in force and effect until further orders of the court made herein, upon plaintiff making a bond for $500 as required by law."

To the petition defendants filed their an-

swer in which they admit the passage of the resolutions mentioned in the petition, and further allege that plaintiffs had not set out all the proceedings had by the board, and attached to their answer a copy of a resolution passed by the board December 8, 1925, reciting the filing of a protest against the proposed use of the unassigned portion of the sinking fund for such building purpose with the county clerk, and the failure of protestant to present such protest, and the overruling same, and concluding as follows:

"Be it further resolved by the said board of county commissioners that it does hereby ratify, approve and confirm its said resolution of September 8, 1925, and all matters therein provided for.

"And be it further resolved, that in pursuance of said resolution of September 8, 1925, that a special fund from the sources provided for in said resolution mentioned, be and the same is hereby created to be known as 'The Custer county courthouse and jail construction fund,' and all moneys in said resolution provided for for that purpose, or that may hereafter be derived from any lawful source, for that purpose, be and the same are hereby appropriated to said fund for the special purposes mentioned in said resolution of September 8, 1925."

Also, a copy of a resolution adopted by the board on the 15th day of February, 1926, concerning the adoption of the plans and specifications of the architects, which resolution is:

"Whereas, Sorey & Vahlberg, architects of Oklahoma City, Okla., have this day appeared before the board of county commissioners of Custer county, state of Oklahoma, with a proposition to furnish plans and specifications under which to erect the proposed courthouse and jail for Custer county, Okla., under resolution adopted by said board on the 8th day of September, 1925, and resolutions subsequent thereto relating to the subject-matter, and at an estimated cost of not exceeding $140,000, and,

"Whereas, the plans and specifications are submitted to said board for action thereon at this time and in accordance with the propositions herein contained in connection therewith, and

"Whereas, by the terms of the proposition submitted with said plans and specifications, it is proposed by said architects to furnish said plans and specifications; to supervise the construction of the building in accordance with the plans and specifications; to guard the interest of the county in the erection of said building, including the checking and approval of the work as it progresses as an aid to said board in the allowance of bills and approval of work and construc-

tion; and to furnish necessary counsel and advice in the interpretation of the plans and specifications, and

"Whereas, it is further proposed by said architects to furnish said plans and specifications and perform said services for a compensation as follows: Five per cent. of the total cost of the work arising under the plans and specifications so furnished, which is to be paid; one per cent. of estimate cost of building in 60 days from this date; two and one-half per cent. of the contract price at the time of letting contract for the whole or any portion of the building, based on the contract price of the work then let; and the balance of fee, one and one-half per cent., on each payment made to the contractor during construction to be paid in installments as the contractor is paid. Any unpaid balance of the five per cent. fee, based on the actual contract price, to be paid at the time the work is completed, and the final payment made to the contractors, and

"Whereas, under said proposal the liability for payments provided for is to be paid out of 'the Custer county courthouse and jail construction fund,' created and provided for by resolutions dated September 8, 1925, and December 8, 1925, by the board of county commissioners of Custer county, Okla., and such payments shall in no manner be or become a liability generally against said Custer county, against any other fund, against the board of county commissioners of said county, or other official of said county, individually, or in their official capacity, but said special fund shall alone be looked to for payments, and

"Whereas, said board has approved said plans and specifications and has agreed to accept said proposal upon condition that liability for payment be limited to said fund 'the Custer county courthouse and jail construction fund' specified and created as hereinabove set out.

"Now, therefore, be it resolved by the board of county commissioners of Custer county, state of Oklahoma: That the proposal of said Sorey and Vahlberg, as set out in the preamble hereof, be and the same is hereby accepted upon condition of liability for payment as above set out; that the plans and specifications offered be and the same are hereby accepted and approved as the plans and specifications under which the proposed courthouse and jail are to be erected; that the said plans and specifications be and the same are hereby ordered filed with the county clerk of said Custer county, and that a copy of this resolution approved and signed by said Sorey and Vahlberg and the county commissioners of Custer county, be and the same shall constitute the contract of employment. "

A protest against the proposed use of the

sinking fund for such building was filed in the district court, and a copy thereof, with notice of filing same, was served on the county clerk. This protest came on for hearing before Hon. E. L. Mitchell, district judge, on November 2, 1925, and the district judge disqualified in the matter and directed the clerk to certify his disqualification, and the hearing was continued to some future term for hearing before a special assigned judge.

On November 16, 1926, Hon. T. P. Clay, district judge, having been assigned to Custer county to hold court for one week, defendants filed their motion to dissolve the temporary injunction and served notice upon plaintiffs that the motion to dissolve would be presented on November 19th. On November 18th, plaintiff filed a motion to transfer the case to the superior court at Clinton. When the motion to dissolve came on for hearing on November 19th, plaintiffs objected to the jurisdiction of the district court, claiming that their motion to transfer to the superior court automatically removed the case to that court. The trial court refused to permit the case to be removed, and declined to hear the case on its merits, but consented to hear the motion to dissolve, and held the burden upon the defendants on the motion; heard the evidence offered by both sides, and at the close thereof, held that the temporary injunction should never have been granted, and dissolved the same, from which order this appeal is prosecuted.

The first proposition urged is, that the district court was without jurisdiction to consider the motion to dissolve, for the reason that the case had been, in law, transferred to the superior court.

In view of the conclusions we have reached in considering the whole case, and the uncertain status of the superior court since the decision in Koch v. Keen, 124 Okla. 270, 255 Pac. 690, we deem it unnecessary to pass upon this proposition, inasmuch as it was admitted by counsel for plaintiff in oral argument that this question is purely technical.

Under the authority of Ferk v. Hall, 119 Okla. 251, 249 Pac. 1106, the order dissolving the temporary injunction might be affirmed, but for the answer of defendants, and the evidence introduced by them on the motion to dissolve. It is shown thereby that defendants were about to let a contract, which would violate section 26, art. 10 of the Constitution by incurring an indebtedness against the county, which could not be

lawfully created without the assent of three-fifths of the voters of the county, voting at an election for that purpose. It is further shown that they had already entered into a contract with the architects whereby they had agreed to pay them, out of the special fund attempted to be created, one per cent. of the estimate of the cost of the buildings, within 60 days from the 10th day of February, 1926. The estimate of the cost of the buildings was $140,000. That the county had no fund out of which the cost of the buildings or the fee of the architects could be paid is clear. In Ferk v. Hall, supra, where this court had under consideration a resolution very similar to the one in this case attempting to create a "special courthouse fund" in Texas county, it was said:

"From a careful analysis of the resolution, in our judgment, it is of no effect, and while it is an attempt to create a fund for the purpose of constructing a courthouse, and provides that such 'courthouse funds shall consist of all of the unassigned portions of the sinking fund of said county, derived from penalties, interest, and forfeiture,' etc., yet, it gives no direction or authority to the officers who are necessarily the custodians of such fund, if there be any such fund, to transfer same, and specifies no time when the transfer of such funds shall be made."

The same is true of the resolution here. If the resolution is of no effect, then there is no special fund created, regardless of the validity of the several acts of the Legislature, providing different procedure for the creation of such special fund, or any of them. The record discloses that the county had but $55,000 in the sinking fund. It is not shown what part thereof was unassigned, but assuming that none of it was assigned to any other purpose, the whole thereof, if it had been legally converted into the "special courthouse and jail fund," was far less than sufficient to construct a courthouse and jail adequate for the needs of the county, it being shown by the resolution adopted by the board that the estimate of the cost thereof made by the "competent architects" employed by defendants was $140,000. From the record, it is clear that the board knew that a contract which would incur an indebtedness of approximately $85,000 in excess of the amount the county had on hand, that might be converted into the special fund, would be invalid. This is shown by the fact that the board, in contracting with the architects, whereby it agreed to pay said architects five per cent. of the total cost of the work arising under

the plans and specifications, undertook to contract against personal liability of the members of the board, or other officials of said county, individually or in their official capacity.

The invalidity of such contract is clearly shown in Threadgill v. Peterson, 95 Okla. 187, 219 Pac. 389, wherein Mr. Justice Branson, speaking for the court, after quoting section 1615, Rev. Laws 1910, as amended by section 9, ch. 80, Session Laws 1911, sec. 8638, C. O. S. 1921, said:

"The statute hereinabove quoted, which finds its sanction in the constitutional provisions of this state (see Williams' Annotated Constitution, section 26, art. 10), is too plain for any man capable of holding such office to mistake its meaning."

Section 9702, C. O. S. 1921, provides:

"The term 'appropriation,' as used herein, is hereby declared to be synonymous with 'estimate made and approved,' as defined in section 3, ch. 80. Session Laws 1911 (8633), and the provisions, requirements, limitations, and penalty of said chapter 80, Session Laws 1911 (8631-8639), are hereby specifically declared to extend to and embrace 'appropriations' as herein defined."

And section 9703, provides:

"Each and every warrant or certificate of indebtedness must be drawn against a specific appropriation or a specific amount authorized by a bond issue for such purpose. As soon as said warrant, certificate of indebtedness, or a bond, is issued, the same shall be at once signed and attested and forthwith delivered by the officer attesting the same to the treasurer of the county or subdivision thereof, issuing the same for registration."

It is true, section 1, ch. 111, Session Laws 1923-24, p. 133, and section 1, ch. 13, Session Laws 1925, attempt to confer authority on the board of county commissioners to issue time warrants against the special funds therein authorized to be created, but we think such time warrants, if in excess of the amount of money on hand in the special fund lawfully created, together with the revenue provided for the current year applicable to such fund, would be invalid, unless assented to by three-fifths of the voters of the county voting at an election held for that purpose. Threadgill v. Peterson, 95 Okla. 187, 219 Pac. 389; Campbell v. State, 23 Okla. 109, 99 Pac. 778; O'Neil Eng. Co. v. Town of Ryan, 32 Okla. 738, 124 Pac. 19.

In the instant case, the board had gone much further than in the case of Ferk v. Hall, supra. Here the board had gone so far as to enter into one contract for which

no appropriation had been made, and was about to enter into another which had not been authorized. Where an unauthorized indebtedness has been created, or is about to be created, equity will stay the hands of the officers, when properly invoked.

We do not wish to be understood as holding that all the acts of defendants were in violation of law, or that they cannot lawfully proceed to create a special courthouse and jail fund, and when funds sufficient have been accumulated therein, which, together with the income and revenue provided for that purpose for the year, to contract for such courthouse and jail.

In so far as the temporary injunction prohibited such lawful acts, it was wrongfully granted, but in so far as it prevented the unlawful acts about to be done, it was properly granted, and to that extent should have been continued in force.

The order of the trial court should be reversed, and the case remanded, with directions to modify the temporary injunction in such a way as to prevent the board from entering into any contract which would create or attempt to create any indebtedness against the county in excess of the amount of money on hand in a fund lawfully created for the construction of a courthouse and jail in said county, including the revenue provided for such fund for the current fiscal year, and from allowing any claim against the county, issuing or signing any warrant, or other evidence of indebtedness, in excess of such funds and revenue, without the assent of three-fifths of the voters of the county voting at an election held for that purpose.

BENNETT, HERR, LEACH, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 15 C. J. p. 535, §219. (2) 15 C. J. p. 599, §308.