## TONINI & BRAMBLET v. BOARD OF COM'RS OF MAYES COUNTY.

No. 18843. Opinion Filed April 28, 1931.

Rehearing Denied June 9, 1931.

Rittenhouse, Lee, Webster & Rittenhouse, for the plaintiffs in error.

J. Howard Langley and Hall & Thompson, for the defendants in error.

CULLISON, J. Plaintiffs, for their cause of action, state that plaintiffs are experienced architects and a copartnership; that on December 7, 1920, they entered into a written contract with the board of county commis-sioners of Mayes county, whereby plaintiffs would prepare complete plans and specifications for a courthouse to be built in said county; that plaintiffs would be present when said contract was awarded; plaintiffs were to have for their services as architects an amount equal to 5 per cent. of the cost of the proposed building.

Plaintiffs, further pleading, say: That on or about May 2, 1921, the defendants entered into a contract with one Jewel Hicks to do the architectural work; that the defendants refused to carry out their contract with these plaintiffs.

Plaintiffs say that they have prepared complete plans and specifications for said courthouse, and have complied with all the terms of said contract on their part and that defendants still refuse to carry out the terms of said contract on their part.

That on or about July 14, 1921, plaintiffs filed their duly certified claim for services rendered, with defendants; that each and all of such claims have been disallowed by defendants, for which plaintiffs pray judgment.

Defendants interposed a demurrer to plaintiffs' petition, which demurrer was by the court sustained.

On July 16, 1922, plaintiffs filed petition in error and case-made in the Supreme Court of Oklahoma.

On September 16, 1924, the Supreme Court reversed the judgment of the lower court and remanded the cause, with instructions. (Tonini et al. v. Board of County Com'rs, 100 Okla. 246, 229 Pac. 263.)

On February 16, 1925, defendants appeared in the district court of Mayes county, Okla., and filed answer to plaintiffs' petition, in which they allege and say:

"The defendants deny all the material allegations in plaintiffs' petition except as hereinbefore admitted and except as hereinafter admitted, modified, or qualified.

"Defendants say, that on or about the ___ day of February, 1921, they had a conversation with the said O. H. Tonini at the office of the defendants at the courthouse in the town of Pryor, in the county of Mayes, Okla., at which time and place defendants disclosed to the said Tonini the nature of the charges they had heard concerning his lack of capacity and trustworthiness, and at that time informed the said Tonini that defendants were of the opinion the contract sued upon herein was void for the reason that no notice had been given of defendants' intention to enter upon the project of building a county courthouse as required by law; and that they (defendants) at that time in-

formed plaintiffs, through the said O. H. Tonini, that defendants would give notice of their intention to build a county courthouse and that said O. H. Tonini consulted and discussed with said defendants the propriety on the part of the defendants to publish such a notice and that he (Tonini) acquiesced in the suggestion of defendants that it was imperative on the part of all parties concerned to disregard the contract sued upon."

Defendants further say that on February 8, 1921, they caused a notice of their intention to build a courthouse in said Mayes county, Okla., to be published in a newspaper of general circulation in said Mayes county, Okla., as required by section 5813, C. O. S. 1921.

Defendants also contend that plaintiffs consented to abrogate the contract sued on, and that plaintiffs would claim no rights thereunder.

Defendants further say that on March 14, 1921, in pursuance to said notice, they passed a resolution concluding as follows, to wit:

"It is therefore resolved and determined by said board that they will proceed promptly and as soon as it is expedient, to build a courthouse in Pryor, Mayes county, Okla."

The record shows that on the same date, to wit. March 14, 1921, plaintiffs submitted what purports to be their bid for the architectural work contemplated under said notice. We find, upon examination of the record, the only bid submitted by plaintiffs on March 14, 1921, was the filing of the contract sued upon, the same being the contract which had been executed by parties litigant on December 7, 1920, and by all parties abrogated and abandoned about three months prior to the publication of the notice required by law and prior to the passage of the said resolution providing that said courthouse would be built.

Defendants contend and allege that plaintiffs by their conduct have abandoned all rights they may have had under the contract sued upon and elected to take their chances, with other competitors, in getting the architectural work and of superintending the construction of said courthouse under the letting to be made pursuant to the notice and resolution aforesaid, and that plaintiffs are now estopped from claiming any benefits under the contract sued on.

A change of venue having been granted to the district court of Rogers county, Okla., the case was called for trial April ___, 1927, and upon request was tried to a jury.

Thereupon, the defendants moved the court to direct the jury to return a verdict in favor of the defendants, and after a hearing the court sustained the motion of defendants and each of them for a directed verdict, to which ruling of the court plaintiffs excepted.

"Verdict of Jury.

"We, the jury, duly empaneled and sworn to try the above-entitled cause, upon our oaths find the issues in favor of the defendants, and each of them."

Thereafter, the court rendered the following judgment:

"Judgment.

"* * * It is further considered, ordered, and adjudged by the court that the plaintiffs take nothing by reason of this action and that the defendants recover their costs herein expended, to which ruling of the court the plaintiffs excepted."

Plaintiffs filed motion for new trial in due time, and on April 30, 1927, said motion was by the court overruled.

Plaintiffs in error were plaintiffs below. Defendants in error were defendants below. The parties will be referred to as they appeared below.

The pertinent allegations of plaintiffs' petition and of defendants' answer appear in the statement of the case. We deem it unnecessary to discuss in detail the various contentions of either party. Suffice to say, defendants (board of county commissioners of Mayes county, Okla.) contemplated building a courthouse in said county. Plaintiffs induced said defendants to enter into a contract with said plaintiffs, by the terms of which plaintiffs were to furnish plans and specifications for said building and to superintend the building of said house while under construction and to receive for their services as architects an agreed per cent. of the cost of the building.

The contract upon which this action is based was executed December 7, 1920. On December 14, 1921, defendants (board of county commissioners of Mayes county, Okla.) awarded to another person the architectural work on said building and refused to carry out the terms of said contract on their part with plaintiffs.

Plaintiffs bring this action against defendants to recover $6,995 for damages sustained for failure of defendants to carry out the terms of said contract on their part.

Defendants say the contract upon which this action is based is null and void for the reason, when said contract was executed, defendants were unauthorized by law to enter into said contract.

As we see and understand the subject of

this action, there is but one question for judicial determination, viz.

"Is the contract under which plaintiffs seek recovery valid?"

Section 8587, C. O. S. 1921, the same being the general act of March 29, 1919, which authorized the board of county commissioners of any county to build a courthouse, and under which defendants operated in building the courthouse in question in the instant case, reads as follows:

"The board of county commissioners of any county may use for the purpose of erecting or repairing a county courthouse or county jail, or either of them or for making additions thereto or purchasing sites therefor, all or any portion of the sinking fund of the county derived from penalties, interest, or forfeitures, accrued or to accrue as penalties on delinquent taxes, and in addition thereto may use the amount of tax levied for that purpose in any year under existing laws, which tax when added to the other taxes levied may equal but not exceed the constitutional limit of eight mills. The county commissioners before making an order appropriating any portion of the sinking fund or making any contract for the purchase of sites, erection or repair of either the courthouse or jail or making additions thereto, must give notice by advertisement for 30 days in the newspaper designated as the official paper for the publication of the proceedings of the county commissioners, specifying the time and place when and where said matter will be heard, and any taxpayer of the county may appear and file a protest with the county clerk, which protest shall be heard at a regular meeting of such board of county commissioners, or said protest may be filed in the district court of such county; Provided, however, that said protest in either instance must be filed at least ten days before the date set by said board of county commissioners in said advertisement for the hearing of said matter, and in the event said protest is filed in the district court notice of the filing of same must be given said board by service upon the chairman or by service upon the county clerk, which said notice shall be given directly upon the filing of said protest."

The above section of our statute clothes the board of county commissioners of any county with power to use certain funds of the county for building a courthouse.

The board, before appropriating any portion of said funds or making any contract for the erection of a courthouse, must give notice in a newspaper of general circulation in the county of its intentions or proceedings to build a courthouse. The notice so required must specify the time and place, when and where, said matter will be heard. The

notice is given for the sole purpose of giving the people or any taxpayers of the county an opportunity of protesting against the expenditure of said funds, and further provides: "The protest, if any, must be filed with the county clerk of the district court of such county at least ten days before the hearing of said matter."

The record clearly shows, and it is admitted by all parties to the action, that the contract upon which plaintiffs base their right to recover was executed December 7, 1920, nearly three months prior to the date of the actual letting of a contract to furnish plans and specifications for said courthouse.

The record further shows that March 14, 1921, was fixed as the date when the board of county commissioners would finally determine whether or not the courthouse would be built and on that date would receive bids for furnishing plans and specifications for said building.

We are of the opinion, and hold, that the board of county commissioners have no power, directly or indirectly, by contract or otherwise, to expend or agree to expend any portion of the funds enumerated in said section which may be expended for the erection of a courthouse, until the notice provided for in said section shall have been published as required by law.

The publication of the notice required by section 8587, C. O. S. 1921, is jurisdictional and mandatory.

"Whenever an act undertakes to determine a question of right or obligation or of property, as the foundation upon which it proceeds, such act is to that extent a judicial one." Board of County Commissioners of Yellowstone County v. Northern Pacific Railway Company (Mont.) 25 Pac. 1058. Citing In re Sinking Fund Cases, 99 U. S. 700; Smith v. Strother (Cal.) 8 Pac. 852.

It must be apparent to all concerned that the contract upon which the plaintiffs base their right of recovery was executed several months prior to the giving of the notice required by section 8587, C. O. S. 1921, and at a time when no attempt had been made to create a special fund with which to build a courthouse; no taxes had been levied or authorized; no funds in the hands of the county treasurer which had been specifically appropriated for that purpose; the county had no fund out of which the cost of the buildings or the fee of the architects could be paid, that for these reasons the contract was wholly void and is not binding upon defendants or either of them.

We are further of the opinion, and hold,

that plaintiffs by their conduct, as disclosed by the record, rescinded the contract and have abandoned all the rights they may have had thereunder, if any, and they are now estopped from claiming any benefits under the contract sued upon.

This court, in the recent case of Foster et al. v. Board of Commissioners of Custer County et al., 129 Okla. 246, 264 Pac. 615, said:

"The board of county commissioners of any county cannot lawfully enter into a contract on behalf of the county, for the construction of a courthouse and jail, where such contract would, if entered into, require the expenditure of an amount of money in excess of that on hand in a fund legally created for such purpose, together with the income and revenue lawfully provided for such fund during current fiscal year, without the assent of three-fifths of the voters of the county, voting at an election held for that purpose.

"No claim may be legally allowed by the board of county commissioners, or warrant issued, except against a specific appropriation or a specific amount authorized by a bond issue for such purpose."

In the body of the opinion, at page 250, this court said:

"It is further shown that they had already entered into a contract with the architects whereby they had agreed to pay them, out of the special fund attempted to be created, one per cent. of the estimate of the cost of the buildings, within 60 days from the 10th day of February, 1926. The estimate of the cost of the buildings was $140,000. That the county had no fund out of which the cost of the buildings or the fee of the architects could be paid is clear."

To the same effect, we cite the case of Town of Red Fork v. Gantt-Baker Co., 130 Okla. 175, 266 Pac. 444. In the third paragraph of the syllabus this court said:

"Where a party enters into a contract with a town through its trustees without the assent of the voters thereof, conditioned that such party shall perform engineering services for the town on contemplated waterworks improvements, the pay for such services being based upon a percentage of the cost of such improvements, and limited to, contingent upon and payable out of funds to be derived from a bond issue by the town not voted upon or authorized at the date of entering into such contract, and it appearing there were no funds or levy available to pay for such services at date of contract, held, that such contract attempted to create a

present indebtedness against the town and was in conflict with section 26, art. 10, of the Constitution, and therefore void."

The record in the instant case reveals the fact that the Legislature of 1919 passed two acts authorizing the board of county commissioners to accumulate a sinking fund with which to build a courthouse.

On March 10, 1919, the Legislature passed a special act authorizing the board of county commissioners of Mayes county, Okla. to accumulate a sinking fund with which to build a courthouse in said county, limiting the amount in said fund to be raised to $125,000. Said act, however, is not found in the Compiled Oklahoma Statutes, 1921.

On March 29, 1919, the Legislature passed a general act, which may be applied to any county, authorizing the board of county commissioners to accumulate a sinking fund which may be used for the purpose of building a courthouse.

It will be observed, however (supra), the county commissioners of Mayes county, Okla., built the courthouse in the said county under the general act of March 29, 1919.

The plaintiffs, in their brief, say:

"Where there are two provisions of the statute upon the same subject, the earlier being special and the latter general, the proposition is, in the absence of an express repeal or an absolute incompatibility, that the special is to remain in force as an exception to the general and that all matters covered by the special act shall be governed by the provisions contained in said special act."

We make no comment as to the correctness of the rule stated when properly applied. We cannot, however, agree with the attempted application of the rule by plaintiffs in the instant case.

Having held that the purported contract, upon which plaintiffs base their right of action, is void, and that the same was rescinded by them, it would serve no good purpose to discuss the legal effect of a general and special legislative act.

We find no reversible error on the part of the trial court. The judgment of the trial court, in favor of the defendants, is affirmed.

LESTER, C. J., and RILEY, HEFNER, SWINDALL, McNEILL, and KORNEGAY, JJ., concur. ANDREWS, J., dissents. CLARK, V. C. J., absent.