**PROTEST OF ST. LOUIS-S. F. RY. C.**

No. 23611.   Opinion Filed March 14, 1933.

E. T. Miller and Cruce & Franklin, for plaintiff in error.

Raymond Sroaf, Co. Atty., Joe F. Gibson, Asst. Co. Atty., and R. H. Dunn, for defendant in error.

ANDREWS, J.  This is an appeal by the protestant from a judgment of the Court of Tax Review dismissing a protest as to two certain tax levies made by the excise board of Custer county for the fiscal year commencing July 1, 1931.

One of the levies protested was for the county sinking fund and 2.363 mills thereof was protested on the theory that that amount thereof was excessive and void for the reason that the excise board refused to consider the sum of $68,136.20 cash on hand in the sinking fund in determining the amount necessary to be raised by ad valorem taxation for sinking fund purposes.

It is admitted that the amount in controversy is on hand; that approximately $17,-000 thereof was raised by ad valorem taxation for the purpose of constructing a courthouse and jail; that the remainder thereof was the accumulation of penalties, interest, and forfeitures in the sinking fund; that the board of county commissioners, on September 8, 1925, passed a resolution declar-

ing the intention to set aside, appropriate, and use all unassigned portions of the sinking fund derived from penalties, interest and forfeitures theretofore accrued and accruing during the fiscal years ending June 30, 1926, 1927, 1928, 1929, and 1930, for the erection of a courthouse and jail for the county: that no resolution had been adopted transferring the funds from the sinking fund to the courthouse fund, and that the actual transfer thereof had not been made.

The contentions of the protestant are based largely on the decisions of this court in Foster v. Board of County Com'rs, 129 Okla. 246, 264 P. 615, and County Excise Board v. Foster, 153 Okla. 81, 4 P. (2d) 1066.

The protestant contends that the holding in the first cited case was to the effect that no county courthouse fund had been created. We do not so understand that decision. The contract for the construction of the courthouse was thereby held to be invalid, but the validity of the fund was not therein considered.

The second cited case is in nowise applicable to the issues herein.

The sum raised by ad valorem taxation for the construction of a courthouse and jail should never have been placed in the sinking fund, if it was so placed, for, under the provisions of section 19, art. 10, of the Constitution, no tax levied for one purpose shall ever be devoted to another purpose. That provision is a complete answer to the contention of the protestant as to the proceeds of the ad valorem tax levy.

The board of county commissioners was authorized by the provisions of section 7479, O. S. 1931 (section 8587, C. O. S. 1921), to use the remainder of the fund for the purpose of erecting or repairing a county courthouse or county jail, or either of them, or for making additions thereto or purchasing sites therefor. By its resolution it determined to so use such portions of the sinking fund. That portion of the sinking fund was placed there by reason of the legislative enactments and the legislative power to require the placing thereof therein is the power to determine to what use that portion of the sinking fund may be put. While that portion of the sinking fund was not transferred to the courthouse fund, that was a mere matter of making entries on the books of the county treasurer. After the passage of the resolution, supra, both the board of county commissioners and the excise board considered the transfer to have been made.

We are of the opinion and hold that the excise board was not required to consider the amount in controversy as a part of the sinking fund in determining the amount that was required to be raised by ad valorem taxation for that fund, and that the protest was properly denied.

One of the levies protested was for the sinking fund of the city of Clinton, 4.381 mills of which was protested on the theory that there was an understatement of assets on hand totaling $14,698.13.

It appears from the record that the city issued bonds providing for an interest maturity prior to the time in which a levy could be made and collected; that an attempt was made to procure a levy during one fiscal year for three interest maturities; that the Court of Tax Review made an appropriation to pay only two of those interest maturities and fixed the rate of tax levy for sinking fund purposes on that basis; that the effect thereof was to create a shortage in the sinking fund to the extent of an amount equal to one of the interest materities; that a supplemental appropriation was made by the excise board for the purpose of paying the amount of that interest maturity; that that interest maturity was paid therefrom; that the effect thereof was to do indirectly what could not be done directly and to create a shortage in the sinking fund; that the funds used to pay that interest maturity had been appropriated for the payment of other sinking fund indebtedness; that the result thereof was to leave those items unpaid; that at the end of that fiscal year the amount of that shortage was set up as a liability against the fund; that the city attempted thereby to underestimate the assets in the sinking fund and thereby to procure an appropriation and levy for the fiscal year in violation of the law and the prior order of the Court of Tax Review; that the plan was to provide by tax levy funds to retire indebtedness that cannot be legally retired for the reason that to make a tax levy therefor would be to impose an undue tax burden in violation of the rule stated by this court in St. Louis-San Francisco Ry. Co. v. Forbess, Co. Treas., 111 Okla. 48, 237 P. 596; Going, Co. Treas., v. A., T. & S. F. Ry. Co, 106 Okla. 258, 234 P. 346; C. D. Coggeshall & Co. v. Smiley, Co. Treas., 142 Okla. 8, 285 P. 48: In re Gypsy Oil Co., 141 Okla. 291, 285 P. 67; Protest of Trimble, 151 Okla. 74, 300 P. 406, and Jones, Co. Treas. v. Blaine, 149 Okla. 153, 300 P. 369.

The protestee refers to the protest as a

"double protest." We find no double protest in the record. The record shows a continuing protest. The thing protested this year is the very thing, under a different form, the protest to which was sustained last year.

The protestee says that if the protest is sustained the city will be deprived of the revenue necessary to pay outstanding indebtedness. That is the natural effect of incurring an indebtedness without making provision for the payment thereof. When the first interest maturity on the bonds was fixed at a time prior to the time when a levy could be made and collected, it was apparent that there would be no funds on hand for the purpose of paying that indebtedness. The purchaser of the bonds was charged with knowledge of that fact. He will not be heard to complain that the city is in default for the payment of the amount of that first interest maturity.

We find and hold that the Court of Tax Review erred in denying the protest. The cause is remanded to that court, with directions to enter an order requiring the excise board of Custer county to reduce the amount of appropriation for the city sinking fund and to reduce the rate of levy accordingly.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, OSBORN, BAYLESS, and WELCH, JJ., concur. McNEILL and BUSBY, JJ., absent.