**Joe W. CARMICHAEL, Plaintiff in Error,**

**v.**

**BOARD OF COUNTY COMMISSIONERS of the COUNTY OF WOODWARD, State of Oklahoma, Defendant in Error.**

**No. 42512.**

Supreme Court of Oklahoma.

Oct. 6, 1970.

William L. Fry, Wichita, Kan., for plaintiff in error.

Joseph A. Young, Jr., Dist. Atty., Woodward, for defendant in error.

BLACKBIRD, Justice:

In this action, instituted in June, 1966, plaintiff in error, an architect, sought recovery, as plaintiff, against the defendant in error, as defendant, of the sum of $7,902.30 on account of professional services allegedly rendered under his contract with defendant in connection with the proposed construction of a Woodward County "Activity Building and Fair Buildings".

The parties will hereinafter be referred to by their trial court designations. The contract, a copy of which was attached to plaintiff's petition (and introduced in evidence at the trial as "Plaintiff's Exhibit A") was executed on March 31, 1964, and was an adaptation of one of The American Institute of Architects' forms of " * * * AGREEMENT BETWEEN OWNER AND ARCHITECT". This form's word "OWNER" referred to the defendant, and a part of the mentioned adaptation consisted of adding to the regular form's provisions a 14th and 15th "ARTICLE". The contract's "ARTICLE 15" reads as follows:

"All terms of this agreement *are contingent on the approval of a Bond election for this work* as above stated. Should the Bond election fail then this agreement shall be binding on any successors of the owner for 18 months after said election. If a second Bond election for the purpose of this work should be held during the 18 month period, and fail, then either party may terminate this agreement before the end of the thirty day period." (Emphasis added)

Plaintiff's petition, and its supplement, alleged, in substance, that he performed "all the possible terms * * *" and conditions to be performed by him under the contract; that a bond election for the purpose contemplated therein was held in Woodward County; and that in the "first" such election said County's electors approved the issuance of such bonds, and the bonds were sold, and the County Activity and "Associated fair buildings" were constructed, but, when he presented his claim

to defendant, it was denied. (Also attached to plaintiff's petition was a letter dated May 19, 1966, from the County Attorney of Woodward County to plaintiff's attorney, from which it may be inferred that defendant rejected plaintiff's claim on its said County Attorney's advice that the bond issue election was held more than 18 months after the contract's effective date and after all obligations thereunder had terminated, and also because said County had no funds from which the sum, thus claimed, could lawfully be paid.)

In its answer to plaintiff's petition, defendant admitted that it entered into an agreement with plaintiff, under which he was to prepare "preliminary plans for a County Activity Building, to be submitted * * *" to it, and "if said plans were approved" by it, and " * * * by a vote of the people", plaintiff would be the architect on the project and receive, as his fee, a percentage of the project's contract price. Defendant alleged, however, that the preliminary cost estimate plaintiff submitted was in excess of the amount defendant considered feasible, and the project was abandoned. Defendant further alleged that there were no funds available for "payment of the alleged contract and therefore said contract is void."

At the trial before the court, it was stipulated that the only election in Woodward County on the proposition of issuing general obligation bonds for construction (of any building for any purpose similar to that of the buildings contemplated in the above quoted contract) was held on November 16, 1965, and that $150,000.00 was the total amount of bonds whose issuance was proposed.

As a witness called to the stand by plaintiff, Mr. Fowler, County Clerk of Woodward County, testified that he was also clerk of the defendant Board, and further testified, from said County's estimate of needs and financial statement for the fiscal year 1962–1963 (introduced in evidence as plaintiff's Exhibit C, but not made a part of the transcript of the trial court's proceedings filed in this Court) that, at the end of that year, June 30, 1963, the County's general fund had in it a total unencumbered balance of $13,461.64, and that it was "carried" into, and appropriated in, the succeeding year's budget. Fowler also testified, among other things in substance, that $150,000.00 was derived from sale of the bonds issued pursuant to the above mentioned (November, 1965) bond election; that $3,400.00 in interest had accumulated on this bond money; that the County's "Free Fair Budget account" once had a total of $154,400.00 in it, but that $131,432.28 of that amount had been expended, leaving a balance in the account of $21,967.72; and that a special levy of 1.03 mills had been levied against property evaluations in the County which will "bring in" $36,975.00 of revenue to pay the installments due on said bonded indebtedness for its first two years. Fowler further testified that the County made no appropriation during the fiscal years of 1963 and 1964 for the Free Fair or for constructing buildings for said Fair, and had "set up", in its estimate of needs and budget, no appropriation to pay for architectural services on said "Free Fair Buildings".

By cross-examining plaintiff, defense counsel established that he knew, at the time his contract with Woodward County was entered into, that the County had no funds with which it could pay him for architectural services rendered under it, and that any pay he was to receive for such services must come from the proceeds of a future bond issue; that the contract contemplated that "if the bond issue passed" he would perform such services, and, if it didn't, he wouldn't. Defense counsel also obtained from plaintiff the admission that he had not expected to be paid out of any surplus in the County's general fund, and admitted that he "never did come up" with a plan for the project that would cost less than $373,000.00, but stated that he and the defendant Board never had a meeting "to take it further down from that * * *", and that there

" * * * is where it was left". Plaintiff also disavowed any claim that the County, with the much lesser sum it had expended on its fair building project, had constructed anything similar to the project he had designed.

At the close of the evidence, the defendant demurred to it and moved for judgment in its favor. The court thereafter sustained the demurrer and entered judgment for defendant, on the ground that the subject contract was invalid as a violation of Article 10, Section 26, of the Oklahoma Constitution, after finding from the evidence that, at the time it was entered into, there were no funds available for payment of services rendered thereunder.

After the overruling of his motion for a new trial, plaintiff lodged the present appeal.

Plaintiff's argument for reversal is set forth under five propositions. The only case he cites, Board of Com'rs of Kingfisher County v. Vahlberg, 198 Okl. 527, 180 P.2d 144, is cited to support his first four propositions, under which he says that Counties may contract for architectural services in planning prospective construction; that the subject contract is severable, providing for the County's payment to him of varying amounts upon his completion of various phases of the work prescribed therein; that he had completed the contract's "Schematic Design Phase"; and that therefore he was entitled to recover the $7,902.30 sued for, either under the contract's provisions for a fee of 35% of 6% of the Fair building project's cost, or on a quantum meruit basis—even if the project, as he designed it, was abandoned and never constructed.

We think the decisive issue, determined by the trial court's judgment, was whether or not Woodward County had any funds appropriated with which it could legally pay for the architectural services contemplated therein, at the time the contract was entered into.

As plaintiff's "PROPOSITION V", he contends that "There was at all times ample funds available * * *" to pay him. His representation that, at the end of each month (presumably during the fiscal year the contract was entered into) Woodward County had more than $13,000.00 that "was not earmarked for anything" and could have been used to pay for services he rendered under the contract, will not stand scrutiny, for, as defendant points out (and as will be noted from the witness Fowler's testimony), these funds were merely unexpended balances that had been appropriated to various accounts, and for other purposes, earlier in the year. The expenses of Woodward County's Fair building project could no more have legally been paid from these accounts than could the cost of constructing a court house and jail have been paid from the sinking fund referred to in Foster v. Board of Com'rs, 129 Okl. 246, 264 P. 615. Under this cited case, all such expenditures are unauthorized under 62 O.S.1961, Section 479 (C.O.S. 1921, Sec. 8638), 68 O.S.1961, Section 293 (C.O.S.1921, Sec. 9702), and Art. 10, Section 26, of the Oklahoma Constitution. Notice also other cases cited in Tonini & Bramblet v. Board of Com'rs of Mayes Co., 149 Okl. 183, 186, 299 P. 896, 899, 900, and Excise Board of Carter County v. Chicago, R. I. & P. Ry. Co., 152 Okl. 120, 3 P.2d 1037.

Nor can plaintiff's claimed fee be paid from the balance of $21,967.72 that, according to Mr. Fowler's testimony, remained in the County's Free Fair Budget account, because that money was accumulated from the bond issue that had not been voted at the time the subject contract was entered into. See Town of Red Fork v. Gantt-Baker Co., 130 Okl. 175, 266 P. 444. In the absence of any showing that Woodward County had funds available, under the criteria above referred to, with which to pay for architectural work done pursuant to the subject contract, we find no cause for reversing the trial court's judgment. In the Vahlberg case, supra, there was no contention (as shown by our opinion therein, 180 P.2d p. 149) that the subject contract was invalid on account of

the absence of funds on hand to carry out the construction project involved.

In accord with the foregoing, the trial court's judgment is affirmed.

BERRY, V. C. J., and DAVISON, JACKSON and LAVENDER, JJ., concur.

IRWIN, C. J., concurs in result.

WILLIAMS, HODGES and McINER-NEY, JJ., concur specially.

McINERNEY, Justice (concurring specially):

I believe the principal question is whether the fee of the architect contracted to be paid from funds to be later voted by the people in approving a bond issue is an enforceable debt.

Article 10, § 26, Oklahoma Constitution, which is construed in O'Neil Engineering Co. v. Incorporated Town of Ryan, 32 Okl. 738, 124 P. 19 (1912) and Town of Red Fork v. Gantt-Baker Co., Inc., 130 Okl. 175, 266 P. 444 (1928), cited by Defendant-in-Error, prohibits such an indebtedness. I would affirm the judgment of the trial court on the basis of the rule announced in these cases.

I am authorized to state that WILLIAMS and HODGES, JJ., concur in the views herein expressed.